IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELECTRONIC CREATIONS CORP.,

                    Plaintiff,

v.

GIGAHERTZ, INC. and
DAVID BROWN aka DAVID BROWNE,

                    Defendants.

Civil Action No. 5:12-CV-1423 (GTS/DEP)

**TRIAL BY JURY DEMANDED**

---

## COMPLAINT

Plaintiff, Electronic Creations Corp. ("ECC" or "Plaintiff"), for its Complaint against Defendant Gigahertz, Inc. and David Brown ("Defendants"), alleges:

## NATURE OF THE SUIT

1. This is an action for copyright infringement, trademark infringement, and unfair competition arising from Gigahertz, Inc.'s and David Brown's wrongful actions in connection with the copying, distribution, altering, display, hosting, and/or promotion of certain copyrighted protected websites and trademarks owned by ECC. Defendants' acts have injured ECC, are likely to continue injuring ECC, and unless restrained will continue to cause such damage and harm.

## PARTIES

2.     Plaintiff Electronic Creations Corp. is a corporation organized and existing under the laws of the state of Colorado, having a principal business address of P.O. Box 1379, Santa Rosa, CA 95402.

3.     On information and belief, Defendant Gigahertz, Inc. is a corporation organized and existing under the laws of the state of Nevada, having a principal place of business at 122 W. Bridge Street, Oswego, New York 13126.  On information and belief, Gigahertz, Inc. operates an interactive commercial Internet business under and through the domain names Gigahertzinc.com, fakehack.com, is-a-jerk.com, and addeffects.net through which it conducts business with consumers in all states including New York.

4.     Upon information and belief, Defendant David Brown is an individual of the full age of majority and resides in and is a citizen of the State of New York with a home address of 122 W. Bridge Street, Oswego, New York 13126.

5.     On information and belief, Brown is, and at all times relevant to this Complaint was, the sole shareholder and chief executive officer of Defendant Gigahertz.  On information and belief Brown is the sole employee of Defendant Gigahertz and Brown operates Gigahertz from his home. On further information and belief, Brown directed, controlled, participated in, engaged in, performed, authorized, approved, ratified, and/or actively and knowingly caused, and was a moving, active, conscious force behind, the complained of acts of Gigahertz.

## JURISDICTION AND VENUE

6.     This is a civil action arising under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., as amended (hereinafter "Copyright Act"); the Trademark Act of 1946, 15 U.S.C. § 1051, et

seq., as amended (hereinafter "Lanham Act"); and related state law claims of unfair competition and deceptive trade practices. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights, and trademarks); 28 U.S.C. § 1338(b) (action asserting a state claim of unfair competition joined with a substantial and related federal claim under the patent, copyright, or trademark laws); 28 U.S.C. § 1367 (supplemental jurisdiction); and pursuant to 28 U.S.C. § 1332 (diversity of citizenship) in that there is complete diversity of citizenship between ECC and Defendants, and the amount in controversy exceeds $75,000.00.

7. Gigahertz is now, and at times relevant to this Complaint has been, subject to personal jurisdiction in the state of New York as it does business in this state, has committed tortious acts in this state, and has otherwise established contacts in this state making the exercise of personal jurisdiction proper.

8. Venue is proper in this District as the Defendants reside within the Northern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because, on information and belief, Gigahertz has knowingly and purposefully directed its tortious acts to this District and a substantial part of the events giving rise to the claims in this action occurred in this District.

**BACKGROUND**

9. ECC is an Internet development company that provides unique electronic services tailored for the web including building, leasing, and managing websites.

10. ECC manages websites, e-mail accounts, and Internet domain names (web addresses) for clients across the globe.

11. ECC's websites are solid and reliable, with user interfaces that speak of utter simplicity while allowing the highest functionality and the most complex interaction with a database. ECC's websites provide valuable information, tools, and services to consumers.

12. ECC's websites include, for example, PropertyAppraisal.com, GoAuto.com, Pup.com, ElectronicCreations.com, VH.com, Cobb.com, SonomaProperty.com, CommercialProperties.com, ElectronicAppraisal.com, CyberRealty.com, DuckPond.com, MT.org, Petaluma.org, We.org, IllinoisTrader.com, IowaTrader.com, MichiganTrader.com, MinnesotaTrader.com, OhioTrader.com, and WisconsinTrader.com.

13. Internet domain names or "web addresses" such as those owned by ECC have an exceedingly high value because domain names are needed to locate and access Internet websites and there are a limited number of available domain names.

## ECC'S COPYRIGHTS AND TRADEMARKS

14. ECC is the author and owner of certain copyright protected websites consisting of creative and original expression related to providing useful information to consumers via the Internet (the "ECC Works").

15. The ECC Works include materials published online at ECC's website at www.go.org.

16. These materials are covered by U.S. Copyright Registrations No. TX-7-448-820.

17. ECC's websites are promoted through a number of distinctive and federally registered trademarks including ELECTRONIC CREATIONS, GOAUTO.COM, COBB.COM, PUP.COM, FXREALTY.COM, VH.COM, and SPIRITMALL (the "ECC Marks").

18. The ECC Marks are the subject of U.S. Federal Trademark Registration Nos. 3399565, 3885279, 3447218, 3447216, 3068571, 3133374, and 2675573.

## GIGAHERTZ'S AND BROWN'S UNLAWFUL ACTS

19. On information and belief, Gigahertz is a website design and hosting company that, through the efforts of Brown, has developed a business of infringing upon the copyrighted works and trademarks of others on the Internet, including ECC.

20. On information and belief, Defendants registered the Internet domain name addeffects.net on or about December 15, 2010 and the domain name fakehack.com on or about December 23, 2010 (together, the "Infringing Sites").

21. On information and belief, the Infringing Sites operate as one, sharing elements and links with each other. The Infringing Sites copy, alter, and republish existing websites that are located on the Internet, many of which are registered with the United States Copyright Office or contain materials registered with the United States Copyright Office.

22. Defendants' alterations to ECC's websites damages the value of the websites, including the value of ECC's registered trademarks, copyright protected materials, and Internet domain names that are used as Internet addresses for the websites.

23. Defendants' Infringing Sites provide tools that apply more than 120 alterations or "effects" to existing websites owned by ECC and third parties. These alterations include, for example, appearing to replace all of the images on the site ("swap pics"), manipulating items on the page ("edit page"), and adding overlay images and text on top of the existing site ("mean insults"). Examples are attached as **Exhibit A** showing Defendants' alterations to the ECC's websites.

24. On information and belief, Defendants' system is designed to apply these alterations in real time, meaning that Defendants continue to store the original website on their computer

servers while "recoding" some portion of the site for the purpose of displaying altered versions of the copied websites.

25.     On information and belief, Defendants misappropriate Internet webpages that they then associate with the Infringing Sites in one of two ways.  First, Defendants use a computer program known as a "spider" to "crawl" the Internet and copy, store, and alter webpages through Defendants' computers.  Second, Internet users can manually enter a website address to "fake hack" -- either by typing the domain name/address into a text box at the Infringing Sites or by directly entering a URL into their browser using a third and fourth level domain in conjunction with fakehack.com or addeffects.net (*e.g.*, www.nynd.uscourts.gov.fakehack.com, where "uscourts" is the fourth-level domain and ".gov" is the third-level domain) (the "Direct Entry Method").  When a visitor uses the Direct Entry Method, Defendants' computers copy the website associated with the third and fourth level domain name on their servers.

26.     On information and belief, Defendants maintain copied webpages on their servers for an indefinite time period.  Webpages copied onto Defendants' servers remain there long after their use on fakehack.com or addeffects.net.

27.     On information and belief, Defendants' copies of third-party websites are identified and "indexed" by Google.

28.     On information and belief, when a search engine such as Google uses its spiders to index content on the Internet, the spiders will encounter the original copyrighted material not only on the existing authentic website, but will also encounter copied and altered versions of the content stored on Defendants' computer servers.  As a result, when an Internet user subsequently conducts a search on the search engine for the copyrighted material or associated search terms, the user may

receive results for the copied/altered version of the copyrighted material stored on Defendants' servers instead of, or in addition to, the original site.

29. On information and belief, search engines such as Google penalize websites whose content is duplicated on another Internet website. As a result, ECC's websites that have been copied onto Defendants' servers will not rank as highly, or at all, in response to a relevant search on Google and ECC may thereby be deprived of visitors to its websites.

30. On information and belief, Internet domain name and website valuation algorithms penalize domain names and websites that are deemed to have been associated with offensive or improper website content and Defendants' copying and alteration of ECC's websites has, or is likely to, result in a devaluation of ECC's domain names and/or websites.

31. On information and belief, although they did not obtain permission or a license from ECC, Defendants are copying, distributing, altering, displaying, hosting, selling and/or promoting, and/or Defendants have copied, distributed, altered, displayed, hosted, sold and/or promoted, portions of the ECC Works including a large number of copyrighted materials owned by ECC and covered by the aforementioned copyright registrations.

32. On information and belief, the ECC Works that have been copied, distributed, displayed, hosted, sold and/or promoted by Defendants include, for example, the content of ECC's GO.ORG website.

33. On information and belief, Defendants designed the Infringing Sites with the purpose of copying materials from existing websites, publishing and displaying those materials on Defendants' websites, and submitting the Infringing Sites to Internet search engines.

34. On information and belief, Defendants knew when they designed the Infringing Sites and their systems for copying existing websites onto Defendants' computer servers that some or all of the materials on the existing websites that they intended to copy were copyrighted. Accordingly, on information and belief, Defendants have actual knowledge of their infringement of ECC's copyrights in the ECC Works.

35. On information and belief, Defendants' actions are particularly egregious because ECC's copyright notices are frequently distorted, blocked, or otherwise not viewable on the copied ECC Works and Defendants have added their own legend to such documents.

36. On information and belief, Defendants do not operate as an Internet Service Provider and the ECC Works are not stored on the Infringing Sites at the direction of website users.

37. On information and belief, Defendants had actual knowledge that the materials Defendants copied, distributed, displayed, hosted, sold and/or promoted, infringe ECC's copyrights in the ECC Works.

38. On information and belief, Defendants obtain a financial benefit attributable to their copying, distributing, displaying, hosting, selling and/or promoting the copied ECC Works.

39. As a direct result of Defendants' copying, distributing, displaying, hosting, selling and/or promoting the copied ECC Works, ECC has suffered harms including but not limited to the diversion of Internet users from ECC's websites.

**FIRST CLAIM FOR RELIEF**
**(Copyright Infringement – 17 U.S.C. § 501)**

40. ECC repeats and realleges each and every allegation set forth in the foregoing paragraphs 1–39, as though fully set forth herein.

41. At all times relevant hereto, ECC has been and still is the owner and proprietor of all right, title, and interest in and to the ECC Works.

42. The ECC Works contain creative material wholly original to ECC and are copyrightable subject matter under the copyright laws of the United States.

43. Defendants have infringed and continue to infringe ECC's copyrights by copying, distributing, altering, displaying, hosting, and/or selling the ECC Works.

44. Such copying, distributing, altering, displaying, hosting, and/or selling of the ECC Works was done by Defendants without the consent, approval, or license of ECC.

45. On information and belief, the foregoing actions of Defendants have been knowing, deliberate, willful, and in utter disregard of ECC's rights.

46. The above acts by Defendants violate ECC's exclusive rights under § 106 of the Copyright Act, 17 U.S.C. § 106, and constitute willful infringement of ECC's copyrights under § 501 of the Copyright Act, 17 U.S.C. § 501.

## SECOND CLAIM FOR RELIEF
### (Trademark Infringement – 15 U.S.C. § 1114)

47. ECC repeats and realleges each and every allegation set forth in the foregoing paragraphs 1–46, as though fully set forth herein.

48. On information and belief, at some time after ECC's first use in commerce of the ECC Marks and after ECC's federal registration of the ECC Marks, Defendants copied pages from ECC's websites onto their servers, including the ECC Marks.

49. On further information and belief, Defendants continue to store a copy of pages from the ECC's websites on their servers, including the ECC Marks, and are using the ECC Marks together with Defendants' displayed of altered versions of the ECC Works.

50. Defendants' wrongful use of the ECC Marks and misappropriation of pages from the ECC websites are likely to cause confusion as to the sponsorship or authorization by ECC of the altered websites, or alternatively, destroy the origin-identifying function of the ECC Marks.

51. The foregoing actions of Defendants have been knowing, deliberate, willful, and in utter disregard of ECC's rights.

52. As a proximate result of Defendants' actions, ECC has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits, and the strength of its trademarks.

53. The above acts by Defendants violate ECC's exclusive rights and constitute trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

54. Defendants' aforesaid acts have irreparably damaged ECC and will continue to irreparably damage ECC unless enjoined by this Court, as a result of which ECC is without an adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### (Unfair Competition – 15 U.S.C. § 1125)

55. ECC repeats and realleges each and every allegation set forth in the foregoing paragraphs 1–54, as though fully set forth herein.

56. The ECC Marks, as used by ECC, are distinctive marks and have become associated with ECC and thus exclusively identify ECC's business, products, and services.

57. Because of Defendants' wrongful use of the ECC Marks and its appropriation of the ECC websites, customers are deceptively led to believe that the websites fakehack.com and addeffects.net originate with or are sponsored by or otherwise approved by ECC, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58. The foregoing acts and conduct by Defendants constitute false designation of origin, passing off, and false advertising in connections with products or services distributed in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59. Defendants' aforesaid acts have irreparably damaged ECC and will continue to irreparably damage ECC unless enjoined by this Court, as a result of which ECC is without an adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, ECC respectfully requests of this Court:

1. That judgment be entered in favor of ECC and against Defendants on all counts;

2. That judgment be entered in favor of ECC and against Defendants for all damages sustained by ECC due to Defendants' copyright infringement in violation of the Copyright Act, trademark infringement in violation of the Lanham Act and New York law, and unfair competition in violation of the Lanham Act;

3. That an accounting be ordered in favor of ECC and against Defendants for all profits received due to Defendants' copyright infringement, and unfair competition in violation of the Lanham Act;

4. That Defendants be required, jointly and severally, to pay ECC statutory damages of $150,000 per ECC Work pursuant to 17 U.S.C. § 504(c);

5. That actual, compensatory and statutory damages, be awarded against Defendants for their wrongful actions;

6. That the Court preliminarily and permanently enjoin Defendant Brown and Defendant Gigahertz, its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with them, jointly and severally, from:

    a. Copying, distributing, altering, displaying, hosting, selling and/or promoting the ECC Works;

    b. Using any copy or colorable imitation of the ECC Marks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation, or distribution of any product or service, in such fashion as to relate or connect such product in any way to ECC, or to any goods sold, manufactured, sponsored, approved by, or connected with ECC; and

    c. Engaging in any other activity constituting unfair competition with ECC, or constituting an infringement of the ECC Works or constituting any damage to ECC's name, reputation, or goodwill.

7. That the Court order an award of costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 505, or as otherwise permitted by law, incurred by ECC in connection with this action;

8. That ECC be awarded pre-judgment interest and post-judgment interest on the above damages awards; and

9. That ECC be awarded such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ECC hereby demands a jury trial on all issues triable by a jury.


Dated:  September 13, 2012                Respectfully Submitted,


  s/Mitchell J. Katz
Mitchell J. Katz, Esq. (301057)
Jason C. Halpin, Esq. (516562)
Menter, Rudin & Trivelpiece, P.C.
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1498
Phone: 315-474-7541
Fax: 315-474-4040
Email: mkatz@menterlaw.com
       jhalpin@menterlaw.com


*Of Counsel:*

David E. Weslow, Esq.
Ari Meltzer, Esq.
Wiley Rein LLP
1776 K Street, N.W.
Washington, DC 20006
Phone: 202-719-7000
Fax: 202-719-7049
Email:  dweslow@wileyrein.com


*Attorneys for Plaintiff Electronic Creations Corp.*